UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBLY ARNOLD and BYRON ARNOLD,<br><br>Plaintiffs,<br><br>v.<br><br>LOANCARE, LLC, et al.,<br><br>Defendants. | No. 1:20-cv-00189-NONE-EPG<br><br><u>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED AND RECOMMENDING THAT UNSERVED DEFENDANTS BE DISMISSED SUA SPONTE</u><br><br>(ECF No. 18)<br><br><u>ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL</u><br><br>(ECF No. 29) |

Plaintiffs Kimbly Arnold and Byron Arnold ("Plaintiffs") filed a complaint against Defendant Loancare, LLC a/k/a Lakeview Loan Service, LLC ("Loancare") and two Doe Defendants in the Superior Court of California, County of Stanislaus on December 31, 2019. (ECF No. 1-2 at 2). The complaint alleges that Defendants, who were Plaintiffs' creditors, misstated the amount remaining on Plaintiffs' loans. Loancare removed the action to this Court on February 6, 2020 for federal question and diversity jurisdiction. (ECF No. 1).

Loancare initially filed a motion to dismiss on February 12, 2020. (ECF No. 3). The District Judge granted the motion and granted leave to amend on April 7, 2020. (ECF No. 13). In doing so, the Court noted that "If plaintiffs are unsuccessful in curing the defects identified above
1

in any amended complaint they elect to file, the court may well conclude that the granting of further leave to amend would be futile." (ECF No. 13 at p. 6).

On April 27, 2020, Plaintiffs filed a first amended complaint ("FAC") against Defendants Loancare; Does 1-2; Sterns Lending; Loancare employees Carin White and Tere Childers; and Law Firm Malcom * Cisneros. According to the docket, only Loancare has been served.

On June 4, 2020, Loancare filed a second motion to dismiss the FAC. (ECF No. 18). Plaintiffs filed an opposition on June 22, 2020, (ECF No. 21), and Loancare filed a reply on July 2, 2020, (ECF No. 22). On November 6, 2020, Plaintiffs filed a motion to disqualify Loancare's counsel and several filings in support of their motion. (ECF Nos. 28-31). No opposition to the motion to disqualify has been filed. On December 4, 2020, District Judge Drozd referred the motion to dismiss and motion to disqualify to the undersigned "for the preparation of findings and recommendations and/or other appropriate action," (ECF No. 32).

For the reasons that follow, the Court recommends granting Loancare's motion to dismiss and dismissing the FAC without leave to amend. The Court further recommends dismissing the unserved Defendants in this case sua sponte. Finally, the Court denies Plaintiffs' motion to disqualify.

## I. SUMMARY OF ALLEGATIONS

The FAC alleges as follows:

Plaintiffs received a federally funded mortgage from Defendant Stearns Lending in October 2015. Plaintiffs were to pay $1,388.87 per month on the loan, which had a principal amount of $195,126.56. Plaintiffs fell six months behind on their payments and on May 10 or 16, 2016, Loancare sent Plaintiffs a statement indicating that they now serviced Plaintiffs' loan. That statement demanded $9,964.29. In addition, Loancare indicated that Plaintiff had a surplus in escrow of $1,521.17, which Loancare retained due to Plaintiffs' delinquency.

On or about June 16, 2016, Plaintiffs contacted Andrew Moher, a bankruptcy attorney, in connection with Loancare's statement that Plaintiffs "owed $10,469.18 including the defendant attorney fee $427.50 and $480.00 $12,277.66 including deficiency of $17.00 'Attorney Assessed Fees'. In which the defendant owed the plaintiff a surplus amount of $960.58 at this time." (ECF

No. 17 at 3). The FAC cites to Exhibit C, which is not relevant. (*See id.* at 21). Exhibit B appears to be a document from Plaintiffs' bankruptcy case and shows several costs and fees for attorneys. (*Id.* at 19).

Plaintiffs next allege that Loancare owed them $2,164.10. "On or around June, Loancare added the plaintiff Attorney Andrew Moher onto the Plaintiff Monthly Statement, Deeds and as Second lien hold while relying on the defendant Loancare not to mislead, conspire to commit fraud against the plaintiff in any form." (*Id.* at 3). Plaintiff cites to Exhibit E, which appears to be the Chapter 13 Standing Trustee's Final Report and Account from Plaintiffs' bankruptcy case in this district, case number 16-90571. The exhibit, dated January 3, 2018, shows a list of Plaintiffs' creditors. Loancare is listed, and it appears to show Plaintiffs owed Loancare $9,793.18 at the time. It also showed that Loancare asserted a claim against Plaintiffs for $18,055.31, which the trustee allowed and had been paid in full. It does not list Moher as a creditor. (*Id.* at 27).

"On or about June, the defendant LoanCare first submitted False and Misleading claims to the United States Court claiming (1) Loancare was owed $18,0555.31 [sic]" for an ongoing mortgage payment and $9,793.18 in arrearage after retaining an escrow surplus amount from Plaintiffs.

Plaintiffs allege that they made a number of payments before and during their bankruptcy proceedings and during the pendency of their bankruptcy proceeding. Beginning with the dismissal of Plaintiffs' bankruptcy in August 2017, Plaintiffs began making monthly payments to "the defendant," "keeping the loan current and up-to date." (ECF No. 17 at 4-5). But on January 16, 2018, Loancare sent a statement to Plaintiffs, demanding a payment of "$16,825.98 on unpaid principal balance of $190[,]875.21 after receiv[ing] a total amount of $36,430.16 in payments from May 2016 to December 2017[.]" Plaintiffs allege that this statement was false and misleading.

Plaintiffs filed a complaint with the Department of Business Oversight "and there was no money due to the defendant to initiating foreclosure proceed in written correspondence from defendant Tere Chiders 'was $9,793.18'." Plaintiff cites to Exhibit J of the FAC, which is correspondence from Loancare employees, Defendants Tere Childers and Carin White.

3

1  The attached correspondence from Chiders and White indicates that Loancare began its
2  foreclosure proceedings before Plaintiffs filed for bankruptcy. When they filed for bankruptcy,
3  the past-due balance on their mortgage "was $9,793.18." (*Id.* at 40). After their bankruptcy case
4  was dismissed, Plaintiffs were subject to the initial due date of their loan, rendering Plaintiffs in
5  default. Foreclosure proceedings resumed. (ECF No. 17 at 40-42).

6  Plaintiff also attaches a letter dated January 3, 2018 from Loancare, offering Plaintiffs an
7  opportunity to enter a Trial Payment Plan (TPP) for a mortgage modification.

8  Counts I-IV of the FAC allege violations of the False Claims Act.

9  Claim V alleges violations of the "Homeowner Bill of Rights & HAMP, SB 1137:
10 Negligent Misrepresentation and Breach of Duty of Care[] for inaccurately crediting the
11 borrower's mortgage payments and for inaccurately providing reinstatement amount both to the
12 plaintiff and the Government for reimbursement." (*Id.* at 10).

13 Count VI alleges "Violation of Homeowner Bill of Rights Fraud and Unfair Claim," and
14 that Loancare "sent misleading monthly statement and payment amounts to FHA" which violated
15 "the truth and lending regulation . . . and/or . . . Homeowner Bill of Rights act," and violated
16 Plaintiffs' Fourteenth Amendment rights. (*Id.* at 11).

17 **II.     PREVIOUS MOTION TO DISMISS**

18 This is the second motion to dismiss in this case. Loancare filed the first motion to dismiss
19 on February 12, 2020. (ECF No. 3). Loancare argued that the original complaint violated Federal
20 Rule of Civil Procedure 8, that certain claims failed to state a claim, and that Plaintiffs violated
21 Federal Rule of Civil Procedure 9 by failing to allege fraud with particularity. (*Id.*).

22 The Court granted Loancare's motion to dismiss on April 7, 2020. (ECF No. 13). The
23 Court found that Plaintiffs failed to plead fraud with particularity under Rule 9. (*Id.*). In addition,
24 the Court noted that Plaintiffs "allege that defendant 'defrauded [the] Federal Housing
25 Administration' and submitted false claim to the Federal Housing Administration, (Doc. No. 1,
26 Ex. B at ¶¶ 13, 15), a claim plaintiffs do not appear to have standing to bring. *See Spokeo, Inc. v.*
27 *Robins*, 136 S. Ct. 1540, 1548 (2016) (holding that Article III of the Constitution requires the
28 plaintiff to allege a 'particularized' injury that affected him 'in a personal and individual way')."

(*Id.* at 4-5).

The Court granted leave to amend as it was Plaintiffs' first complaint. (*Id.* at 6). However, the Court cautioned Plaintiffs that "[i]f plaintiffs are unsuccessful in curing the defects identified above in any amended complaint they elect to file, the court may well conclude that the granting of further leave to amend would be futile." (*Id.* at 6 n.2).

### III.  SUMMARY OF ARGUMENTS

Loancare moves to dismiss this action on three bases. First, Loancare argues that the FAC does not meet the requirement in Federal Rule of Civil Procedure 8 for a short and plain statement. (ECF No. 18 at 5). Second, Loancare argues that Plaintiffs lack standing under the False Claims Act because they did not file the suit as relators, and, as such, lack standing to bring their first four claims. (*Id.*). Finally, Loancare argues that Plaintiffs did not plead fraud with particularity under Rule 9(b) for the fifth and sixth claims.

Plaintiffs argue that the FAC puts Loancare on notice for the allegations against it. They argue their False Claims Act claims may proceed under the basic principles of fundamental fairness under the Fifth Amendment. Finally, Plaintiffs argue that Rule 9(b) does not apply to their fifth and sixth claims because they are not pleading fraud.

### IV.  LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

complaint. *See Iqbal*, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**V.  DISCUSSION**

    **A.  Motion to Dismiss**

        1.  <u>Federal Rule of Civil Procedure 8</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." *Id.* 8(d)(1). The rule "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6). *McHenry v.*

1   *Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

2   Although a complaint is not required to include detailed factual allegations, it must set
3   forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
4   face.'" *Iqbal*, 556 U.S. at 678.

5   "While 'the proper length and level of clarity for a pleading cannot be defined with any
6   great precision' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or
7   a complaint that was highly repetitious, or confused, or consisted of incomprehensible
8   rambling.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059
9   (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice &*
10  *Procedure* § 1217 (3d ed. 2010)).

11  Defendant argues that the FAC fails to comply with Federal Rule of Civil Procedure 8
12  because "the facts are absent and the claims incomprehensible." (ECF No. 18 at 5).

13  The Court agrees. The allegations are very difficult to understand and do not set forth a
14  short and plain statement of the claim showing that the pleader is entitled to relief. Plaintiffs
15  allege they were current on their federally insured mortgage after their bankruptcy case was
16  dismissed. Then they were sent a statement on January 16, 2018 that indicated they needed to pay
17  $16,825.98. (ECF No. 17 at 5). After setting forth those allegations, the FAC becomes
18  particularly unclear. Although Plaintiffs attach some correspondence and various financial bills
19  and statements, it is difficult to know how the attachments relate to their claims. Beginning
20  halfway through paragraph 22 on page 5 of the FAC, the allegations become a jumble of dollar
21  amounts and dates. The last date discussed in the FAC is February 1, 2018.

22  With respect to the False Claims Act ("FCA") claims—Claims I-IV—Plaintiffs contend
23  that their loans were federally insured, that Defendants misstated the amount Plaintiffs owed, and
24  that Defendants submitted false claims to the government. However, the allegations do not
25  amount to a short and plain statement. Some are conclusory. (*See, e.g.,* ECF No. 17 at 3, 5).
26  Others are difficult to comprehend. The following three consecutive paragraphs are illustrative:

27  > 24. The defendant Carin White concluded that the misleading claim for
28  > $16,991.98 will be figured into the February 1, 2018 approved modification plan

7

>forcing the plaintiff and the government to pay on the false claim.
>
>25. The Plaintiff alleges as homeowner the defendant LoanCare, Lakeview, Sterns and two employee (1) Tere Childers and Carin Whit y is liable to the Government under the False Claim Act ("FCA") 31 U.S.C §§3729 for submitting false claims; material documents to the Government in a written agreement for payment $17,373.00; the plaintiff claim was not owed to the defendant on the behalf of the plaintiff.
>
>26. The plaintiff claims the defendant attorney or law firm Malcolm * Cisneros personally is also liable for acts under 31 U.S.C. § 3729(A)(l)(D),(E) (G) knowingly received money by the Government by authorizing documents to intending to defraud the Government without completely knowing the information on the written document is true or knowingly caused false record or statement material to obligate the Government to pay the money .

(*Id.* at 5-6) (as in original).

That is not a short and plain statement for Claims I-IV. The FAC is difficult to follow the amounts and dates alleged. There are few details beyond conclusory accusations that any claims were submitted to the government. The role of the law firm is not spelled out. These failures violate Rule 8.

Claims V and VI are similarly incomprehensible. The latest date listed in the body of the FAC is February 1, 2018. (*Id.* at 5) (alleging that Defendant White "concluded that the misleading claim for $16,991.98 will be figured into the February 1, 2018 approved modification plan forcing the plaintiff and the government to pay on the false claim"). However, under the heading Claim V, Plaintiffs provide later dates (May 10, 2018 and "12/20219 [sic]") and a different dollar amount ($18,055.31). (*Id.* at 10).

Claim VI suffers from related problems. Under the heading "Violation of Homeowner Bill of Rights Fraud and Unfair Claim," it states:

>By doing the acts described above in Paragraph 11 to 48 the defendant(s) Lakeview and LoanCare sent misleading monthly statement and payment amounts to FHA including misappropriating escrow funds violating the truth and lending regulation causing the defendants and their attorney to be unjustly enriched by the federal insured fund attach to the mortgage loan caused and/or violate Homeowner Bill of Rights act and or permitted the violation of Plaintiff's rights not to deprive the plaintiff from their property with due process of the Fourteenth Amendment, thereby entitling Plaintiff to recover damages pursuant to

8

42 U.S.C. § 1983.

(ECF No. 17 at 10-11). Because "the acts described above in Paragraph 11 to 48" are largely incomprehensible, Plaintiffs' Claim VI also violates Rule 8.

Therefore, the Court will recommend granting Loancare's motion to dismiss for noncompliance with Rule 8.

Although this basis for dismissal is sufficient to dismiss the entire complaint, the Court will examine the other bases for dismissal as well.

### 2. Claims I-IV: Standing Under False Claims Act

Broadly, the FCA is a statute that permits civil actions against those who defraud the government. *See, generally, Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020) (quoting and describing 31 U.S.C. §§ 3729(a)(1) and 3730(b)). Such suits may be brought by the government, 31 U.S.C. § 3730(a), or by an individual, known as a relator, *id.* § 3730(b); *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007) ("The FCA authorizes a private person, known as a relator, to bring a qui tam civil action 'for a violation of section 3729 for the person and for the United States Government … in the name of the Government.'" (quoting 31 U.S.C. § 3730(b)(1) (alteration in original)). Relators must also follow certain notice requirements before serving the complaint on the defendants. *See* 31 U.S.C. § 3730(b)(2)-(5).

Loancare argues that the FCA claims fail for lack of standing because such claims must be brought by the government or, in certain situations, by a relator, and Plaintiffs are not claiming to be either.

Standing is a constitutional requirement: "Article III, section 2 of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. The doctrine of standing is used to determine whether a conflict qualifies as a case or controversy and is therefore capable of judicial resolution." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 747 (9th Cir. 1993) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). There are three constitutional components:

9

> First, the plaintiff must have suffered an "injury in fact." . . . Second, there must be a causal connection between the injury and the conduct serving as the basis of the lawsuit. . . . Third, it must be likely that the injury will be redressed by a favorable decision.

*Id.*

Generally, a plaintiff lacks standing to pursue a third party's rights. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). In most FCA cases, a plaintiff is suing to vindicate the United States government's rights. However, this is constitutionally permissible because the government is the real party in interest, and the relator sues in the government's name:

> the FCA effectively assigns the government's claims to qui tam plaintiffs . . . who then may sue based upon an injury to the federal treasury. Under this theory of standing, the FCA's qui tam provisions operate as an enforceable unilateral contract. The terms and conditions of the contract are accepted by the relator upon filing suit. If the government declines to prosecute the alleged wrongdoer, the qui tam plaintiff effectively stands in the shoes of the government. Because the government clearly is capable of establishing injury-in-fact, causation, and redressability, qui tam plaintiffs satisfy these Article III requirements as well.

*Kelly*, 9 F.3d at 748.

Hence, in an FCA case, "[t]o establish standing, [Plaintiffs] must plead facts in [their] complaint that demonstrate that [they] satisfies the FCA's qui tam requirements. If [they] cannot meet those requirements, then [they do] not have standing and the federal courts do not have subject matter jurisdiction over [their] FCA claim." *United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 614 (6th Cir. 2015); *cf. United States ex rel. Gerbert v. Transport Administrative Services*, 260 F.3d 909 (8th Cir. 2001) (failure to maintain interest in partial assignment to relator defeats standing, even if originally granted).

Plaintiffs have not followed the qui tam requirements: they have sued in their own names rather than as relators. They have not pled compliance with FCA's qui tam requirements. Thus, the Court lacks standing over their four FCA claims. Accordingly, the Court recommends dismissing Claims I-IV.

### 3.  Rule 9(b)

Next, Loancare argues that Claims V and VI sound in fraud but were not pleaded with particularity as required under Rule 9(b). Plaintiffs counter that they were not bringing forth claims for fraud. (ECF No. 21 at 7).

Rule 9(b) of the Federal Rules of Civil Procedure requires that when fraud is alleged, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.' " *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) ). A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction." *Vess*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.1994), *superseded by statute on other grounds*)).

The Court explained these requirements to Plaintiffs in its order dismissing their original complaint. (ECF No. 13 at 4) ("Under Rule 9 of the Federal Rules of Civil Procedure, a 'complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.'" (quoting *McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013))).

Rule 9(b) applies to claims of fraud and claims that sound in fraud:

> Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b). Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard. Any averments which do not meet that standard should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b). To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2). *Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).*

11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (emphasis added, certain internal quotation marks and citations omitted).

Claims V and VI bring statutory claims under the Homeowner Bill of Rights, the Home Affordable Modification Program, California Civil Code section 2923.5,[1] the Unfair Competition Law, and 42 U.S.C. § 1983. Plaintiff also brings claims for "Negligent Misrepresentation and Breach of Duty of Care[.]" (ECF No. 17 at 10-11).

The claims under the Unfair Competition Law and for negligent misrepresentation sound in fraud, and the heightened pleading requirement applies to them. *See Kearns*, 567 F.3d at 1125 (UCL claims must be pleaded with particularity); *Atl. Richfield Co. v. Ramirez*, 176 F.3d 481 (9th Cir. 1999) (table, unpublished) ("The district court also properly dismissed Ramirez' first and second counterclaims, for fraud and negligent misrepresentation respectively, because they did not comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement."). However, it is not clear that the remaining causes of action must be pleaded with particularity—in part because it is unclear what causes of action Plaintiff is attempting to bring.

Claims V and VI, to the extent they sound in fraud, do not plead fraud with particularity for the same reasons they do not meet the Rule 8 pleading standards. The underlying factual allegations are difficult to follow. While some individual allegations might state a fraud claim, those allegations are intermingled with incomprehensible ones to the point that they cannot be read as being pleaded with particularity. Accordingly, the Court recommends dismissing Claims V and VI for failure to comply with Rule 9(b).

        4.     <u>Leave to Amend</u>

Defendants ask the Court to deny leave to amend without further discussion. (*See* ECF No. 18 at 6). Plaintiffs do not make any argument concerning leave to amend.

"A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be

---

[1] "Plaintiff[s] actually cite[] California Senate Bill 1137 as the basis for this cause of action. This bill was codified in relevant part as California Civil Code section 2923.5." *Alvarez v. GMAC Mortg. LLC*, 2011 WL 13225030, at *3 (C.D. Cal. Nov. 21, 2011).

cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

The instant motion to dismiss is Defendants' second. The Court previously granted the first motion to dismiss, notified Plaintiff of their deficiencies—including their lack of standing to bring claims for fraud against the government and the standards for pleading fraud with specificity—and granted leave to amend. (ECF No. 13). The Court warned Plaintiffs that "[i]f plaintiffs are unsuccessful in curing the defects identified above in any amended complaint they elect to file, the court may well conclude that the granting of further leave to amend would be futile." (*Id.* at 6 n.2).

Plaintiffs have not successfully cured their defects. Rather, the FAC suffers from some of the same deficiencies as the initial complaint. They still have not pleaded fraud with specificity, and they still lack standing to bring claims against Defendants for allegedly defrauding the government. Thus, the Court concludes that further amendments will be futile and recommends denying leave to amend.

### 5. Unserved Defendants

A court may, *sua sponte*, dismiss defendants who have yet to appear when they are in a similar position as the defendants who have appeared:

> As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery,* 44 F.3d 800, 802 (9th Cir.1995); *Silverton v. Dep't of Treasury,* 644 F.2d 1341, 1345 (9th Cir.1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants.").

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008); *accord Ukiru v. Fed. Home Loan Mortg. Corp.*, 602 F. App'x 395, 397 (9th Cir. 2015), *as corrected* (May 15, 2015) (unreported) ("The district court did not err in dismissing non-appearing defendants Titanium Solutions and Cal–Western Reconveyance Corporation as they were in a similar position to that of moving defendants and therefore were properly dismissed based on the facts and law presented.").

1  Here, only Loancare has been served and has appeared. It has moved to dismiss the FAC
2  under Rule 8, for lack of standing, and for failure to plead fraud with specificity. The Court
3  recommends granting the motion on each ground. Each ground applies equally to the claims
4  against the unserved defendants. Therefore, the Court recommends dismissal for all Defendants.

### B. Motion to Disqualify Counsel

On November 6, 2020, Plaintiffs filed a motion to disqualify Defendants' counsel Charles W. Nunley and the law firm Malcolm & Cisneros, a Law Corporation[2] (hereinafter, together, "Counsel"). (ECF No. 29). Plaintiffs argue that Counsel are defendants in this action and represented Loancare in Plaintiffs' previous Chapter 13 bankruptcy. The crux of Plaintiffs' argument appears to be that Counsel were paid from Plaintiffs' escrow account in connection with their services to Loancare in Plaintiffs' Chapter 13 bankruptcy, (*id.* at 4-5),[3] and, according to Plaintiffs, thereby have "an inexcusable conflict of interest as well as self-dealing," (*id.* at 3), and violate the California Rules of Professional Conduct, thus warranting disqualification, (*id.* at 6-8). Plaintiffs also filed various exhibits to support their motion. (ECF No. 31).

Counsel did not file any opposition to the motion.

In *Lennar Mare Island, LLC v. Seadfast Insurance Co.*, Judge Mueller provided the relevant standards for disqualifying counsel:

> This District has adopted the Rules of Professional Conduct of the State Bar of California, and any applicable state court decisions, as its own standards of professional conduct. E.D. Cal. L.R. 180(e). The District's local rules require both familiarity and compliance with California's Rules. *Id.*
> . . .
> If an attorney or firm takes on a representation in violation of these rules, a client may move for disqualification. *See* E.D. Cal. L.R. 110 ("Failure of counsel ... to comply with these Rules ... may be grounds for imposition ... of any and all sanctions authorized by statute or Rule or within the inherent power of the

---

[2] Stylized as MALCOLM ♦ CISNEROS, A LAW CORPORATION.

[3] While it is not clear from the text of Plaintiffs' motion to disqualify, records in Plaintiffs' bankruptcy case in this district, case number 16-90571, indicate that Counsel represented one of Plaintiffs' creditors, not Plaintiffs therein. *See In re Arnold*, Case No. 16-90571 (Bankr. E.D. Cal.), doc. filed Sept. 28, 2017 (filing for LakeView Loan Servicing, LLC signed by an attorney for Malcolm & Cisneros, A Law Corporation, and attaching documents on with Loancare's letterhead); Fed. R. Evid. 201; *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (taking "judicial notice of defendants' motion to dismiss and the fact that the same law firm—O'Melveny & Myers, LLP—represents Katja, New Line, and WB").

Court."); *Visa U.S.A., Inc. v. First Data Corp.,* 241 F.Supp.2d 1100, 1103 (N.D.Cal.2003) ("The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers.") (citing *United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir.1996)). . . .

Disqualification is a blunt tool meant to encourage wide berth of ethical grey areas, its ruthlessness warranted only after a clear showing of conflict. On the one hand, "[b]ecause disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary." *Concat LP v. Unilever, PLC,* 350 F.Supp.2d 796, 814 (N.D.Cal.2004). *See also Gregori v. Bank of Am.,* 207 Cal.App.3d 291, 300–01, 254 Cal.Rptr. 853 (1989) ("[M]otions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent."); *Visa,* 241 F.Supp.2d at 1104 ("[S]uch requests 'should be subjected to particularly strict judicial scrutiny.' " (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,* 760 F.2d 1045, 1050 (9th Cir.1985))).

105 F. Supp. 3d 1100, 1007-08 (E.D. Cal. 2015) (alterations within parentheticals in original).

Plaintiffs argue that "the vicaious disqualification of the defendant law who was actually involved in representing in the same or similar case that firm is automatically disqualified should be granted." (ECF No. 29 at 8) (as in original). Plaintiffs cite California Rules of Professional Conduct 1.9 and 1.10 as the basis in California's Rules for disqualification. Rule 1.9 deals with duties for former clients. Counsel's former client was LakeView Loan Servicing, LLC. *See In re Arnold*, Case No. 16-90571 (Bankr. E.D. Cal.), doc. filed Sept. 28, 2017 (filing for creditor LakeView Loan Servicing, LLC signed by an attorney from Malcolm & Cisneros and attaching various documents on Loancare letterhead). The FAC's list of parties includes "LoanCare LLC and Lakeview LLC" and "Lakeview aka LoanCare," which Plaintiffs list as having the same address: 3637 Sentara Way, Virginia Beach, VA 23452. (ECF No. 17 at 2). This indicates that LoanCare and Lakeview are related and may be affiliates. That does not indicate there is a conflict of interest between Counsel's current and former clients. Thus, Rule 1.9 does not appear to apply.

Rule 1.10 limits a law firm's ability to represent a client if one of the lawyers in the firm would be unable to do so. However, Plaintiffs have not made a cogent argument for why any attorney at Malcolm & Cisernos is disqualified.

1    Therefore, the Court denies Plaintiffs' motion.[4]

**VI.    CONCLUSION**

IT IS HEREBY ORDERED that Plaintiffs' motion to disqualify (ECF No. 29) is DENIED.

Additionally, based on the foregoing, IT IS HEREBY RECOMMENDED THAT

1. Defendant's motion to dismiss (ECF No. 18) be GRANTED;
2. Plaintiffs' First Amended Complaint be dismissed, without leave to amend;
3. All Defendants, including those who have not yet been served, be dismissed; and
4. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 1, 2021**               /s/ Erica P. Grosjean
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[4] The undersigned has the authority to deny Plaintiffs' motion directly without findings and recommendations. *See Kalinauskas v. Yin Wong*, 108 F.3d 338, 1997 WL 67691 at *1 & n.1 (9th Cir. 1997) (table, unpublished) (finding magistrate judge's order denying motion to disqualify counsel was not an abuse of discretion); *Quatama Park Townhomes Owners Ass'n v. RBC Real Estate Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019) (finding magistrate's order denying motion to disqualify is a non-dispositive matter).